(Clark County Probate Court.)

A. G. EMIG ET AL. *v.* THE COUNTY COMMISSIONERS AND JOHN H. WILSON.

---

*Ditch appeal.*—In a county ditch appeal, in the trial of the statutory questions submitted to a jury, the defendant has the right to open and close.

(Decided April 22, 1895.)

---

ROCKEL, J.

The defendants in the case at bar insist that they have the right to open and close. This is the first time that this question has arisen in this court, or in any other court, so far as I am informed, the general practice having been, without raising any question as to the matter, for the plain-

tiffs to open and close the case. This practice arose, no doubt, from the general rule that such right usually belongs to the plaintiff. This is a special proceeding not within the code of procedure, and therefore not controlled by the usual rules of general practice; but when it is said that it is not controlled by the usual rules of general practice, it is not meant that general principles are not applied in determining the proper practice to be followed.

The general definition of plaintiff is: "One who begins a suit in a court at law to recover a claim or demand; it is the opposite of defendant." These appellants are plaintiffs in this case, not because they began the proceedings, but because the statute declares that the appellant shall be plaintiff, and the County Commissioners and the petitioner shall be defendants.

It may not be without benefit to briefly review the proceedings in ditch cases, and ascertain how such a cause comes into the probate court. A person desiring a ditch files a petition with the commissioners. The commissioners view the ditch and determine the necessity; then a time is fixed for hearing, at which time the interested land-owner may file his claim for damages and compensation, as well as his remonstrance against the proposed ditch. These matters are heard by the commissioners who have power to subpœna witnesses. After all these matters are passed upon by commisssioners—the ditch located—the costs and expenses determined and apportioned, "any person or corporation aggrieved thereby may appeal from any final order or judgment of the commissioners made in the proceeding and entered upon their journal determining either of the following matters, viz:

"1. Whether said ditch will be conducive to the public health, convenience or welfare.

"2. Whether the route thereof is practicable.

"3. The compensation for land appropriated.

"4. The damage claimed to property affected by the improvement."

A bond is then given by the person appealing; a transcript of the proceedings made by the auditor and by him filed with the probate judge. Thereupon it becomes the duty of the probate judge to file the transcript and the original papers, docket the case, and the appellant shall be the plaintiff therein, and the county commissioners and the petitioner defendants, and the case *shall be so styled.*

Within five days thereafter, the case shall be heard upon preliminary questions, etc. When the matter is heard, if the appeal is found to be perfected, a day is set for hearing, a jury is drawn, impaneled—sent out to view the proposed improvement, "when either party may be heard in person or by counsel, and may offer evidence to the jury under direction of the court upon any matter given it specially in charge." This brings us up to the present stage of this case, and nothing is found to indicate or suggest an answer to the question now under consideration.

While the case is before the commissioners, at least until a resisting land owner appears, there was no adversary party, and the case did not present a phase suitable for parties plaintiff and defendant. When an appeal is taken, the case then presents parties maintaining opposite sides, and it was proper for the legislature to designate one or the other as plaintiffs in the case, using the word as meaning the opposite of *defendant.*

As the appellant is required in the preliminary hearing to show that his appeal has been perfected, for this reason the legislature may have designated him as a plaintiff; but after the appeal is found to be perfected, no inference can be gathered from the statute which side should take the initiative. Equal difficulty is found in applying the general rule of law, that where a party has anything to prove in order to get a verdict, he has

the right to begin and reply. For the plaintiff is here resisting the improvement. If he could defeat it, he would offer no evidence at all. He would abandon the case, for by that act he could win his cause. To permit the plaintiff to open the case, is to start with the assumption that the condition of affairs which it is the duty of the jury to pass upon, is already found to exist.

This construction would hardly be just. The object of giving an appeal in this class of cases is two-fold : First—The matters involved in these four questions are of too weighty a character to permit them to be determined by a body, the members of which, from the nature of their calling, are not skilled in the hearing and determining of legal questions. The purpose is that these questions may be heard by a jury in the presence of a court, in the manner in which legal questions are heard and determined, and if a wrong judgment be rendered, exceptions may be properly taken and reversal had in a higher tribunal.

Second—The determination of these questions involves the taking of private property for a public purpose, the value of which the constitution requires to be determined by a jury. Therefore it seems to me, from reason, *if not from authority*, this appeal comes into this court *de novo*, and it must be so considered in all its phases. That being true, the affirmative of all the questions will devolve upon the defendants, and give to them the right to open and close.

If this be not true, we begin the trial with the attempt to prove a negative, while the affirmative remains yet to be shown—a very absurd, if not unreasonable, position to occupy.

Or else, if we assume that the affirmative of the four propositions submitted to the jury has been established, by what evidence has it been done ? It is claimed by no one that the record of the finding made by the commissioners is competent evidence to go to the jury. This is a suit involving the taking of private property for a public purpose, where the rules of procedure are strictly enforced against the person seeking to make the appropriation ; and it is hardly probable that the legislature intended to bring the appealing land owner into court, *with a presumption of fact against him.*

In the case of *Neff* v. *Cincinnati*, 32 Ohio St. 215, where it was sought to appropriate lands for a street, the land owner claimed the right to open and close the case, which was refused by the trial court. For this refusal error was prosecuted to the Supreme Court, where the ruling of the trial court was sustained. On page 220 of the opinion it is said :

"It follows therefore, in determining which party ought to begin, regard must be had, not so much to the form as to the substance of the case ; and in that view it must be considered what is the substantial fact to be made out, and on which party it lies to make it out."

In the case before us the substantial fact to be ascertained by the jury was the amount of compensation which the city must pay to the property owners, to enable it to acquire the land sought to be appropriated. The assessment was not to be made upon a claim of the property owners, but the city was required to have it made before it could obtain the land. The city therefore was required to move affirmatively in the matter, and to secure an "inquiry and assessment" of compensation by a jury, or fail in the appropriation.

Notwithstanding the city is the plaintiff in the matter, if it could be entitled to a verdict for a nominal amount if neither party gave any evidence, the land-owner would undoubtedly be entitled to begin. But it is clear that the appropriation must fail, unless an actual and not a nominal assessment is made. The constitution guarantees to the owner of the property an actual compensation ; and the statute authorizing the appropria-

tion and providing for the compensation is framed so as to secure an actual and not a nominal assessment.

The statute not only requires the jury to make an assessment of compensation, but it equally imposes upon them the duty of "inquiry" into the matter of compensation; for in nearly every one of the numerous instances in which it speaks of the assessment, it speaks of the "inquiry into and assessment of compensation," as if no assessment was contemplated but such as should be the result of due inquiry by the jury. In view of the provision by the constitution of the statute, it is quite clear that the city could not appropriate the land to the public use desired, without an assessment of compensation to the owners of the property, made upon due inquiry by the jury. In order then to secure a valid assessment, it was incumbent on the city to have the inquiry made upon proof as to the compensation; otherwise the appropriation might fail for want of a valid assessment of compensation.

Since, then, the assessment of a substantial compensation was required, which might have failed without proof given to the jury, and as the appropriation could not be made without such assessment, the court might well be warranted in holding that the city ought to begin, for otherwise it might be defeated.

The duties of the jury in the present proceeding in determining the third and fourth propositions, are very similar it will be observed to those that were required in the case passed upon by the Supreme Court, and in the absence of statute, the same rules would apply to each. It is proper, however, to add that now, in condemnation proceedings by statute, the right to open and close is given to land owners. And, therefore, if only the two last questions were to be submitted to the jury, I might be in more of a quandary than I now am, as to the proper rule to be adopted in the present case. For I might reason that as the legislature had specifically given the right in one case, it might be fair to assume that to be one of the reasons why the appellant land owner was made a plaintiff in the kind of a case now under consideration, and the right to open and close would follow for the reason that such generally belongs to the plaintiff.

But upon the two first propositions, considered in the light of logic and reason, the affirmative certainly rests upon the defendant, and likewise the latter two of the decision in the 32 Ohio St., is followed. All things considered, therefore, I am inclined to believe that the logical order of trial can be better preserved, and thus the rights of all parties better secured, by placing the affirmative upon the defendants, and giving them the right to open and close.

*Mower & Mower* and *Cochran & Rodgers*, for plaintiffs.
*George Arthur*, for defendants.